BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
JENNIFER L. MACPHERSON (202021)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
jmacpherson@bholaw.com

MORGAN & MORGAN COMPLEX
  LITIGATION GROUP
JOHN A. YANCHUNIS (FL324681)
PATRICK A. BARTHLE II (FL99286)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813/223-5505
813/223-5402 (fax)
jyanchunis@ForThePeople.com
pbarthle@ForThePeople.com

THE CONSUMER PROTECTION
  FIRM, PLLC
HEATHER H. JONES (FL0118974)
WILLIAM "BILLY" PEERCE HOWARD
  (FL0103330)
4030 Henderson Blvd.
Tampa, FL 33609
Tel: 813/500-1500
813/435-2369 (fax)
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HAYWARD, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NORTEK SECURITY AND CONTROL, LLC,<br><br>　　　　Defendant. | Case No. **'20CV0854 BEN KSC**<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

00164050

CLASS ACTION COMPLAINT

Plaintiff Brian Hayward ("Mr. Hayward") individually and on behalf of all others similarly situated, asserts Nortek Security and Control, LLC ("Nortek") "robo-called" him numerous times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

## INTRODUCTION

1. Nortek Security & Control, LLC purports to be a leader in wireless Security, Home Automation and Personal Safety systems and devices. Nortek has more than 4 million commercial, residential, and personal systems deployed and more than 20 million connected wireless devices.

2. To promote its business and increase sales, Nortek indiscriminately robo-blast calls throughout the United States with no regard for the law.

3. Mr. Hayward is a victim of Nortek's robo-calling scheme.

4. Mr. Hayward was never a customer of Nortek, never provided his phone number to Nortek and certainly never gave it the required "express consent" to robocall him.

5. Nortek's robo-dialing scheme results in millions of people receiving intrusive, illegal and unwanted robocalls.

## TELEPHONE CONSUMER PROTECTION ACT

6. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call and decided that 'banning' such calls made without consent was the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227.

7. The Supreme Court of the United States found that Americans suffer an invasion of their privacy from these calls that violate the TCPA. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

8. Unwanted and illegal robocalls are the #1 consumer complaint in America, year after year for the last decade. From 2014 to 2019, the Federal Trade Commission ("FTC") alone has reported 30.4 million unwanted robocall complaints.[1]

9. A class action is the only way to halt or even slow Nortek's violation of the TCPA. "Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019).

10. The TCPA was enacted to prevent companies like Nortek from invading American citizens' privacy and prevent illegal robocalls.

11. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1255-56 (11th Cir. 2014).

---

[1]   *See*   https://www.ftc.gov/policy/reports/policy-reports/commission-staff-reports/national-do-not-call-registry-data-book-fy-9;   https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2019/dnc_data_book_2019.pdf. It is noteworthy, the actual number of people that received unwanted and illegal robocalls during the past 5 years is estimated to be in the billions. The 30.4 million number is obviously from individuals that knew how to file a formal complaint with only the FTC and took the time to do so.

12. As will be illustrated in this case, not only did Nortek break the law by calling Mr. Hayward the first time, they continued despite being told to stop and despite Mr. Hayward registering his number on the National Do Not Call Registry.

13. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. This type of damage shared by Mr. Hayward and the class members is the same.

## JURISDICTION AND VENUE

14. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331 and 47 U.S.C. § 227.

15. Mr. Hayward is a citizen and resident of Savannah, Georgia. He received the calls at issue while in the state of Georgia.

16. Nortek Security & Control promotes itself as the leader in Security, Home Automation and Personal Safety wireless devices trusted by more than 3+ million commercial businesses and residential homeowners. (nortekcontrol.com visited on March 12, 2020). Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Nortek is a corporation which was formed in California with its principal place of business in Carlsbad, California and conducts business throughout the United States.

## FACTUAL ALLEGATIONS

17. Mr. Hayward was robocalled by Nortek starting in approximately January 2019. During these marketing calls, Nortek offered its security services.

18. Nortek called Plaintiff from telephone numbers identified on Defendant's website including (800) 421-1587 and (760) 438-7000 (www.nortekcontrol.com/contact-us/)

19. In January 2019, Mr. Hayward answered a call and in trying to determine who was calling him, asked who he would have to make a check out to and the caller answered, "Nortek Security."

20. During a telephone call on or about April 26, 2019, the caller identified themselves as calling from Nortek Security and Control and gave its business address as 5919 Sea Otter Place, Carlsbad, California 92010 with telephone number 760-438-7000 and website www.nortekcontrol.com.

21. Mr. Hayward told a representative of Nortek that he was not interested in their security services and to stop calling.

22. Mr. Hayward asked Nortek to stop calling him during multiple phone conversations.

23. Mr. Hayward registered his cellular telephone number on the National Do Not Call Registry on May 6, 2019.

24. Nortek continued to call Mr. Hayward despite his requests to cease calls and despite putting them on notice they were calling a number they did not have the required express consent to call.

25. Mr. Hayward estimates Nortek called him approximately 13 times after he instructed Nortek to stop calling.

26. Mr. Hayward never provided his cell phone number to Nortek.

27. Mr. Hayward is the "called party."

28. Nortek called Mr. Hayward's telephone number in an attempt to solicit its security services.

29. Nortek never had express consent to place any robo-calls (calls made with an automatic telephone dialing system aka "ATDS") to Mr. Hayward's cellular telephone number.

30. Mr. Hayward answered a phone call and there was a noticeable pause before an individual said they were calling from Nortek. Mr. Hayward informed

Nortek that it did not have permission to call his cell phone to solicit a service he was never interested in and to stop calling him.

31. Each call Nortek made to Mr. Hayward's aforementioned cellular telephone number was done so without the "express permission" of Mr. Hayward.

32. Mr. Hayward is the regular user and carrier of the cellular telephone number at issue, (912) 224-XXXX.

33. Nortek made at least ten calls to (912) 224-XXXX in the last four years.

34. Each call Nortek made to (912) 224-XXXX was with the same telephone system.

35. Each call Nortek made to Mr. Hayward was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

36. By effectuating these unlawful phone calls, Nortek has caused Mr. Hayward the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

37. Nortek's aggravating and annoying phone calls trespassed upon and interfered with Mr. Hayward's rights and interests in his cellular telephone and cellular telephone line, by intruding upon his seclusion.

38. Nortek's phone calls harmed Mr. Hayward by wasting his time, trespassed on his phone, invaded his privacy as well as caused aggravation and inconvenience.

39. Moreover, "wireless customers [like Mr. Hayward] are charged for incoming calls whether they pay in advance or after the minutes are used." *In re: Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).

40. Nortek's phone calls harmed Mr. Hayward by depleting the battery life on his cellular telephone, and by using minutes allocated to Mr. Hayward by his cellular telephone service provider.

41. Despite actual knowledge of their wrongdoing, Nortek continues its illegal scheme of unwanted robocalls.

42. Nortek willfully and/or knowingly violated the TCPA with respect to Mr. Hayward and the members of the Class.

## CLASS ACTION ALLEGATIONS

43. Mr. Hayward, individually and on behalf of all others similarly situated, brings this case on behalf of a Class.

44. The TCPA makes it illegal to robo-call an individual's cell phone. The applicable exception to this law is if the robo-caller has "express consent" to call. This case is about robo-calls to people where Nortek never had consent.

45. Mr. Hayward seeks to certify the following Classes, subject to amendment, as follows:

(1) All persons in the United States (2) to whose cellular telephone number (3) Nortek placed a non-emergency telephone call relating to a solicitation (4) using substantially the same system(s) that were used to telephone Mr. Hayward (5) within 4 years of the complaint and (6) where Nortek did not have express consent to call said cellular telephone number.

46. The Do Not Call Registry Class consists of:

(1) All persons in the United States (2) to whose residential or cellular telephone number (3) Nortek placed a non-emergency telephone call relating to a solicitation (4) using substantially the same system(s) that were used to telephone Mr. Hayward (5) within 4 years of the complaint and (6) more than 31 days after having registered such telephone number on the national do not call registry.

47. Mr. Hayward represents and is a member of the Classes. Excluded from the Classes are Nortek and any entities in which Nortek has a controlling interest, Nortek's agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

48. Excluded from the Do Not Call Registry Class are persons who Nortek's records show made a purchase from Nortek within 19 months of such calls or an inquiry within 3 months of such call.

49. Mr. Hayward is presently unaware of the exact number of members in the Classes but based upon the size and scope of Nortek's business, Mr. Hayward reasonably believes that members of each Class number at a minimum in the thousands.

50. Mr. Hayward and all members of each Class have been harmed by Nortek's actions.

51. This Class Action Complaint seeks money damages and injunctive relief.

52. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

53. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding a multiplicity of identical suits. The Classes can be easily identified through records maintained by Nortek.

54. There are questions of law and fact common to members of each Class, which common questions predominate over any questions that affect only individual Class members. Those common questions of law and fact include, but are not limited to:

(1) Whether Nortek engaged in a pattern of using an ATDS to place calls to cellular telephones without the prior express consent of the called party;

(2) Whether Nortek made telephone solicitation calls to telephone numbers registered on the National Do Not call Registry;

(3) Whether Nortek's conduct was knowing or willful; and

(4) Whether Nortek's actions violated the TCPA.

55. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without his prior express consent, all within the

meaning of the TCPA, Mr. Hayward asserts claims that are typical of the members of the Class.

56. Mr. Hayward will fairly and adequately represent and protect the interests of each Class, and Mr. Hayward does not have an interest that is antagonistic to any member of the Classes.

57. Mr. Hayward has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

58. A class action is the superior method for the fair and efficient adjudication of this controversy.

59. Classwide relief is essential to compel Nortek to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Nortek is small because the statutory damages in an individual action for violation of the TCPA is small.

60. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

61. Nortek has acted on grounds generally applicable to each Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.

62. Moreover, Mr. Hayward alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT I

**(Violation of the TCPA, 47 U.S.C. §§ 227 *et seq*.)**

63. Mr. Hayward incorporates Paragraphs 1 through 62 as if fully set forth herein.

64. Nortek violated the TCPA with respect to Mr. Hayward and members of the Class. Nortek willfully violated the TCPA with respect to Mr. Hayward each time it called Mr. Hayward without having express consent to place such calls using an ATDS.

65. Nortek knowingly violated the TCPA with respect to Mr. Hayward, especially for each of the auto-dialer calls made to Mr. Hayward's cellular telephone after Mr. Hayward revoked any consent Defendant mistakenly believed it had to call him using an ATDS.

66. Nortek repeatedly placed non-emergency telephone calls to the wireless telephone number of Mr. Hayward using an automatic telephone dialing system without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

67. As a result of Defendant's illegal conduct, Mr. Hayward and the members of the Class suffered actual damages and, under § 227(b)(3)(B), are entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

68. As a result of Defendant's willful conduct, Mr. Hayward and the members of the Class suffered actual damages and, under § 227(b)(3)(B), are entitled to, *inter alia*, up to $1,500 per call for each such violation of the TCPA.

69. Mr. Hayward and Class members are also entitled to, and do, seek injunctive relief prohibiting Nortek from violating the TCPA in the future.

## COUNT II
### (Violation of the TCPA – 47 C.F.R. § 64.1200(c)(2))

70. Mr. Hayward incorporates Paragraphs 1 through 62 as if fully set forth herein.

71. The acts of Nortek constitute violations of the TCPA and/or its implementing regulations.

72. The TCPA required the FCC to initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(1).

73. The TCPA required the FCC to conclude such proceedings by issuing regulations to implement methods and procedures for protecting such privacy rights in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers. 47 U.S.C. § 227(c)(2).

74. The TCPA specifically permitted the FCC to issue regulations requiring the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations. 47 U.S.C. § 227(c)(3).

75. The FCC's regulations provide:

> No person or entity shall initiate any telephone solicitation to...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

47 C.F.R. § 64.1200(c)(2).

76. This provision is made applicable to wireless numbers by 47 C.F.R. § 64.1200(e).

77. Nortek failed to maintain the procedures required by 47 C.F.R. § 64.1200(c)(2)(i).

78. Nortek did not record Mr. Hayward's request not to receive calls from Defendant.

79. Nortek did not use any process to prevent making calls to numbers on the National Do Not Call Registry.

80. As a result of Nortek's actions in violation of the TCPA and the Federal FCC's implementing regulations, Mr. Hayward is entitled to an award of damages up to $500.00 for each such violation pursuant to 47 U.S.C. § 227(c)(5)(B).

81. Nortek is aware of the TCPA's do not call rules and has continued to call. Nortek's conduct in violation of the TCPA and the FCC's implementing regulations were willful or knowing.

82. Mr. Hayward requests this Court award treble damages for each such violation pursuant to 47 U.S.C. § 227(c)(5).

**WHEREFORE**, Mr. Hayward requests that the Court enter judgment in his favor and in favor of each Class, and against Defendant for:

A. A declaration that Nortek's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

B. An injunction requiring Nortek not to call any third parties or numbers that were skip traced, or obtained through other means than by obtaining the called party's prior express consent to ensure that Mr. Hayward is not called now or when Mr. Hayward obtains additional telephone numbers in the future;

C. An injunction requiring Nortek to file quarterly reports of third-party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to ensure that Mr. Hayward is not called in the future;

D. An award of actual damages in an amount to be proven at trial;

E. An award of statutory damages for Mr. Hayward and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

F. An award of treble damages, as provided by statute, of up to $1,500.00 for Mr. Hayward and each Class member for each and every call that willfully violated the TCPA;

G. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Mr. Hayward is a proper

representative of the Classes, and appointing the lawyers and law firms representing Mr. Hayward as counsel for the Classes;

     H.     An award of Mr. Hayward's attorneys' fees, litigation expenses, and costs of suit; and

     I.     Such further and other relief the Court deems reasonable and just.

## **DEMAND FOR TRIAL BY JURY**

Mr. Hayward, individually and on behalf of all others similarly situated, demands trial by jury.

Respectfully submitted,

Dated: May 6, 2020

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
JENNIFER L. MACPHERSON (202021)

By:    *s/ Timothy G. Blood*
          TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
jmacpherson@bholaw.com

THE CONSUMER PROTECTION
  FIRM, PLLC
HEATHER H. JONES (FL0118974)
WILLIAM "BILLY" PEERCE HOWARD
  (FL0103330)
4030 Henderson Blvd.
Tampa, FL 33609
Tel: 813/500-1500
813/435-2369 (fax)
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com

MORGAN & MORGAN COMPLEX
  LITIGATION GROUP
JOHN A. YANCHUNIS (FL324681)
PATRICK A. BARTHLE II (FL99286)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813/223-5505
813/223-5402 (fax)

jyanchunis@ForThePeople.com
pbarthle@ForThePeople.com

*Attorneys for Plaintiffs*